All right, each side has 15 minutes. I've been looking forward to argument all week when we have two Ninth Circuit clerks coming back before us to argue. It's a proud moment for everyone, and I know Mr. Sprankling, you clerked for Justice Kennedy as well, I believe, so thank you both for being here. And are you doing this pro bono? Mr. Sprankling We are, yes. Judge Callahan Not through the court pro bono program, but Mr. Sprankling No, it's CJA counsel. Judge Callahan All right. Well, thank you both for your good work in this, and we're ready to hear your arguments. Mr. Sprankling Thank you, Your Honor. Your Honors, may it please the Court, as Judge Callahan just mentioned, my name is Thomas Sprankling, and I represent Mr. Richards in this action. Your Honors, if I can, I'll try to reserve four minutes for rebuttal, but I recognize that's not a given. Your Honors, this case turns on the events of March 8, 2020. That morning, police officers in Oakland found two firearms along a public highway. Although there was no evidence directly connecting Mr. Richards to those firearms, and by that I mean no DNA evidence, no fingerprints, no proof of ownership, the government concluded that he had possessed those firearms and alleged that that violated a term of his supervised release. Now, the District Court agreed and sentenced Mr. Richards to two separate sentences, one 24-month sentence for possession of the firearms and one 24-month sentence for possession of the ammunition. Your Honors, we submit that that ruling was Is it clear that that's how the sentencing was? Because, you know, there's some confusion in the transcript as to whether or not the per count. And, you know, it seems that what the court did was just kind of assess all of the violations as a whole and all the factors under the statute, adopted a 48 months and then split it between the two counts of conviction, the original count. So is it clear that the record establishes that there was 24 months for one of the probation charges and 24 months for the other and that they were stacked? Your Honor, yes, the record was a little confusing because some of the original convictions were written as counts and some were written as charges. But my understanding from the record is that there was, you know, there was a firearm possession count and there was a drug trafficking count. And for each of those, right, was a violation of supervised release was attached. And one of those violations was charge three, which was possession of either the Taurus or the Glock 17 firearm. And one of those violations was charge four, which was possession of ammunition. But weren't there two guns? There were two guns. I see. I saw places in the record where the judge referred to that there were that he was finding him well, finding that it to be proven that there were that he possessed two guns on two separate occasions. Your Honor, I would respectfully quibble with that just a little bit. There were two guns that Mr. Richards is alleged to have possessed a Glock 17 and a Taurus, the one that he allegedly threw out of the car and then the other one that he threw out of the truck when he ultimately got when he got arrested, throwing things out of his truck. Yes, that's right. Your Honor, the Taurus was found along the side of the freeway and the Glock 17 was found near an off ramp in the Grassy area. So, so yes, there were. Sorry, go ahead, Judge Collins. But I'm looking at the judgment. And so the judgment on the first page finds that he committed four violations and they're listed as charge three, four, five and six. And the term is charge three, charge four, charge five, charge six. And then the sentence of imprisonment is that custody of the Bureau of Prisons for a total term of 48 months, which consists of 24 months as to count one on any charge, not charge three, not charge four and 24 months as to count three all the run consecutively. So, so where do we have the necessary factual predicate for your argument that 24 months was assigned to one gun and 24 months was that presenting the sort of keen issue? Yes, Your Honor, it's where I see it is an ER 14 to ER 15, which is where the court provides his limited reasoning for finding that the allegations were proven. He says that I find at a minimum charges three and four possession of a firearm and possession of ammunition have been amply approved by a preponderance of the evidence. And I believe that there's a later discussion on when they talk about those counts matching up those charges matching up to the counts. But that's that's the cleanest I can point you to your honor. Where does it say? Where's the where on the record is the assignment of 24 months to one of the charges and 24 months to one of the others? Your Honor, there's a discussion in the sentencing hearing where probation is involved. And the question and this is actually pretty important was whether there should be two 24 month sentences, whether they run consecutively or concurrently. And originally, the probation officer said I believe concurrently and then later switch it to consecutively. So that's that's where you can see that there are two separate supervised release violations. And I'll I'm happy to find that in a second. I believe that's near the end of the proceeding. If you want to supply it on rebuttal, you can. So I'm sorry, Your Honor. ER 39. Um, the court says it is here. So the sentence will be imposed as follows. The term of supervised release is hereby revoked, and the client, James Richard, is hereby sentenced to the custody of the Bureau of Prisons for a period of 48 months. This term shall consist of 24 months on count three and 24 months on count four to run consecutively. And if they weren't separate convictions and you wouldn't have had the concurrent consecutive question at all. But that gets corrected a few pages later on 43 because the government stands up and says, No, no, no, you can't sentence on charges. You have to. These are punishments for the original offenses, which count one and count three. And then he redoes it on 43 and assigns it to count one and count three. I think I understand where you're coming from on this, Your Honor. Our position is yes, that as a matter of kind of by the book, these were connected to the original crimes of conviction. That's generally how supervised release works. But the conduct that led to those additional violations was the firearm charge in the ammunition part charge, and I'm happy after oral argument goes to do my best to supplement the record on that or submit a short letter brief. But I would like to briefly talk about some of the other issues in this case. Let's jump to Is there any published opinion following United States v Hayman that holds that a violation of a condition of supervised release may not be decided by a judge based on the preponderance of the evidence? And I would also kind of segue into appellant admits that he did not raise the constitutional challenge to consecutive sentences in the district court. And in light of the Ninth Circuit's opinion in United States versus Henderson, you know, what's your best argument that the district court plainly erred in issuing the sentence? So the first answer is easy. There's no published decision on point. In fact, we're not aware of any court that has ruled on specifically on the G to issue. In terms of plain error, I think the answer is threefold. First, Hayman is a relatively recent decision. It was issued in 2019. Courts are still figuring out the repercussions, and no other court, as I mentioned, has gotten to G to second. If you look at footnote seven in the human human plurality opinion, the district court calls out specifically G as a section that could be affected. It certainly doesn't say we hold that our ruling extends to this, but it does specifically name it. And third, and I think this goes to our merits point, we think that Justice Breyer's three factors, which Your Honor held in Henderson were controlling, are so strongly on point that they should have been a clear guide to the district court here. And one that I particularly want to single out to you is the very first factor, which is that the sentence is tied to a discrete set of Federal crimes. In this case, Mr. Mr. Richards was alleged to have been in possession of a firearm. Part of the government's case was that he was a felon in possession under State law. And they actually, if you look at SCR 62, threatened in a future case that they might charge him under 922G1, the Federal offense for felon in possession of a firearm. This seems to go right to Justice Breyer's concern that rather than using supervised release in the classic sense, say under E3, where it's a flexible consideration, it looks more like K. It's a way of getting around the usual protections of a crime. In this case, of course, there was no jury and the standard was preponderance rather than beyond a reasonable doubt. Can I ask you a question about a threshold ambiguity in Justice Breyer's concurrence on that factor? He says, first, Section 3583K applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. There's actually two specifications of federal criminal offenses in the statute, one in the first sentence, which says the persons to whom K applies, and then in the second sentence, which says that when those people commit one of these offenses as the violation, then this follows. So is it clear that he's referring to the second enumeration and not the first? That's a good question, Your Honor. It is not clear to me, but I think what he was trying to do was lay out a general set of principles that guide the analysis. Clearly, we're not saying this applies to all of the supervised release statute. What we're saying is, at least based on the consideration he mentioned, which was tied to a discrete set of federal offenses, it is quite similar. It doesn't matter here, because this one only has what the equivalent, the analog to the second sentence. It doesn't have the analog to the first sentence. Your Honor, let me, could you explain that point one more time for me, just to make sure I understand? Yeah. So the statute here, which is G, applies to anyone who commits any offense who then possesses a firearm in violation of federal law. So it's got an enumeration that looks like the second sentence of K, but it doesn't have the limited universe enumeration as to whom G applies to, the way that K does in the first sentence. I believe I understand your point. Yes. So admittedly, they're not identical statutes, because Justice Breyer, and Justice Breyer analyzed K. But as I mentioned, I think the underlying theme in his very short opinion was the government shouldn't be able to sneak a crime in the back door through supervised release, something that they would generally need a jury trial for. And regardless of whether there's a limited universe... Do you really need this sentence to be talking about, in his first, to be talking about the second sentence? That he's really relying on the enumeration in the second sentence that, you know, anyone who commits, he's focused on the violation of supervised release and not on the underlying federal offense having been enumerated. Your Honor, all I can tell you is that how I read that provision is that his concern was trying to map, that the government would try to map federal crimes into the supervised release context. I think here, for the reasons I've articulated, the best I can do is to tell you that G2 references a specific set of federal crimes, those which are possession of a firearm in violation of federal law. Unfortunately, that's our position. And I do quickly want to address a couple of other things. But if you have further questions on that position, I'm happy to answer. Do we have the third factor here? That's the one that seems to be missing. Yeah. So the third factor is whether the statute limits discretion by imposing a mandatory minimum. You know, it minimizes what a judge can do. I think that's met here for two reasons. So one is that the judge is required to impose a sentence of some kind, right? It's not optional to put the defendant in prison. And second, there is some limitation on time, although it's not quite the same as K. The statute is phrased in the future tense. It's to serve time or to serve, I think, for a term of imprisonment, which would at least seem to take away the possibility of time served. So I would say that, yes, that the third factor is met. It's a different statute, but it has the same criteria. Roberts. Counsel, I want to go back to something that you said a few minutes ago, because I think maybe I misunderstood you. I understood you to say that no court had addressed G? G2. G2 under these circumstances. They have addressed G. Yes. But not G2. That's correct. And I think this matters because G2 is the provision that speaks most directly to the discrete set of Federal crimes. As my colleague on the other side has pointed out, G3 and G4 speak more to general terms of supervised release. So our challenge is to adjust. So the decisions of the third, fourth, and fifth circuits are dealing with a different subsection? I believe so, yes. The only case of the one sided that we found that dealt with firearm possession was a double jeopardy case and not a question under Haymond. Let me ask you about Henderson. Just didn't Henderson, even though technically addressed a different, slightly different point, doesn't the opinion reject the application of apprendi and a lean to determinations of violations of supervised release? Your Honor, I agree that it did address a slightly different point. It was a challenge to E3, I believe, or E in that context. And there they were relying on the pluralities theory that if you could be sentenced to, you know, if if the supervisor Doesn't it implicitly reject? I don't think so. Because I think that I thought I did. But I can never argue with the person who wrote the opinion. But coming at it as a neutral observer, my reading would be that it does not. Because I was talking about the pluralities theory, whereas we all agree that Justice Breyer's concurrence controls. So if it if it from your view, it wasn't addressed, does it need to be addressed? And has any circuit come to the conclusion that you would be entitled to a jury trial under these circumstances? So the question in the G2 question we do think needs to be addressed, and we do think that it entitles Mr. Richards to a jury trial. The E question is not presented in our case, because much like Mr. Heyman, Mr. Richards is sentences resulting from supervised release. We're still under the statutory maximum. So that's that's not an argument we've made here. And so I would say that Henderson is not on point for that, although it does acknowledge that Justice Breyer's concurrence is the controlling test. So I would like to talk briefly about the double jeopardy point, recognizing that the Judge Collins and I unfortunately may have difference of opinion on precisely what what happened below. But to briefly lay out our theory, and I'm happy to respond to questions at that point. What happened here? If you look at the amended petition, which is the relevant charging document, there were six different violations of supervised release charged. One of those that got the court found was not proven. Another one was dismissed. Two were admitted that left us with the two in this case, the possession of the firearm and the possession of the ammunition. Those cases, those issues were proved up in front of a trial court. There was a hearing, there was evidence, and the court found in the passages I've read you that that was what justified the time in prison. And that's why I ended up with two 24 month sentences. And Judge Collins, as I'm talking, I'm even taking another reason why I can lay this out more clearly. 3583E talks about Class A violations, Class B violations, and Class C violations, and maybe even Class D violations. But what that says is there was a maximum amount of time you can do for each of those violations. And the way, and the sentencing guidelines provides guidance for that. And so the guideline range, as I understand, for a Class B violation combined with the original crimes of offense was 18 to 24 months. So I don't think anybody argued below that a ny of those charges, the charge three or charge four alone, could have supported a 48 month sentence. What happened was the government wanted to establish, there was a, I believe, a threats crime that the government was trying to establish. And that's where they got the 48 months from. They failed to meet their burden on that, largely because they relied on hearsay evidence. And then the judge was struggling to come up with another way to get to the same result, which was two 24 month sentences. So do either of you have over time? But I'm happy to have the judges ask you more questions. Roberts. I am just curious on this why a consecutive sentence. So if it's, as long as each one of those is within the guideline, 18 to 24, where's the, what standard do we use for deciding whether it violates double jeopardy to do those consecutively? They're independent of each other. I understand they're related. Well, I wouldn't say they're independent. They arise from the same transaction recurrence. So as far as we can tell, the only evidence in the record of ammunition is in the Glock 17. Sure. But if it had controlled, if it had controlled substances and a gun, those would have been two separate violations, even though they were both in the same bag in the cab of a truck. That's true. But if you look at the Keene decision, there's an early footnote that talks about this. And what it discusses is when you have multiple guns in the same course of conduct, for example, I suppose if you found three guns in a closet, at least under 922G1, that would count as one transaction. It wouldn't count as three transactions. But the ammo was set out separately in the terms of the supervised release. So if you just had ammo, he could get 24 months, couldn't he? So under the logic of Keene, right, which is about 922G1, which uses very similar language as the terms of supervised release, the terms use the phrase any when they talk about what he wasn't allowed to possess. He wasn't allowed to possess any firearms, ammunition, and a couple of other things. So if we had only found a box of shotgun shells, he could get 24 months on that. If we had only found an unloaded gun with no ammunition, he could have gotten 24 months on that. So these are separate violations. So again, under the logic of Keene, they're the same basic transaction. So Keene dealt with a situation where someone was sentenced to two different sentences for a So this court, at least as of 1996, in a published opinion, had rejected the notion that those are two separate transactions. All right. Thank you. All right. Thank you. We've taken you in overtime, but I'll give you two minutes for rebuttal. Thank you. All right. We'll hear from the government. Good morning. Good morning. Thank you. May it please the court. My name is Annie Shea, and I represent the United States in this appeal. This court should affirm the revocation sentence for three reasons. First, the district court did not commit plain error in revoking Richard's supervised release term because 18 U.S.C. section 3583 G2 remains constitutional after Haman. Second, the district court properly imposed two consecutive sentences based on the revocation of Richard's two supervised release terms. And third, sufficient evidence supports the district court's findings that firearms and ammunition in violation of the supervised release. Now, because the court asked my colleague about the double jeopardy issue first, I'd like to clarify some points as to that issue. So Richard's argument that he was essentially punished twice for the same conduct seems to misunderstand either the record here or how supervised release works, or both. The argument makes mistake of adopting the view that the Supreme Court in this case has disavowed, which is a supervised release revocation is not punishment for a new offense. It's typically understood as part of the penalty for the initial offense. So in other words, it's a sanction for the defense. As I read Justice Breyer's concurrence, what it's essentially saying is that when you have these three factors, it essentially is punishment for the other offense. And that's essentially, so you have the enumeration of the violation, so it's a discrete set, and then it takes away the discretion of the judge and limits the discretion in a particular matter. And then he says it more closely resembles the punishment of new criminal offenses. So it's really kind of a three-factor test for taking the situation out of the original offense. Am I reading this concurrence incorrectly? Yes, Your Honor. I would agree to a large extent with your view of Justice Breyer's concurrence. I think that what Justice Breyer, the crux of his analysis there, and again, he did identify three aspects of 3583K that, considered in combination, made it closer to what he deemed punishment for a new offense versus ordinary revocation. So I think it's important for us to understand how ordinary revocation works, which typically operates under Section E of 3583, and then how punishment for a new offense might look like under Section K. And just to kind of — I'm a little confused, maybe. And I had the — you have it in your brief, and it came up, I think, with Mr. Sprankling, that if you could explain to me, do we have to determine whether Mr. Sprankling and Mr. Richards' consecutive sentences stem from his supervised release violations or from his original counts of conviction, and what's the impact? I know you talk in there about whether it comes from the conviction or the supervised release, and I'm a little confused. Yes, Your Honor. That is actually very important. And I think part of that stems, first of all, again, from how supervised release works under Section E. And so when — I'll just use this case as an example, because it might be a little bit difficult to understand. But Richards was convicted originally of two counts. First, it was a Title 21, a drug possession count, and then he had a violation of 924C. The original sentence for these two counts included both terms of imprisonment and terms of supervised release. Those terms of supervised release, there were two of them, but they ran concurrently. So essentially, what E3 provides for is that when a term — when you're — when you violate your supervised release and a revocation occurs, it is tied to the term of supervised release. And so once that happens, the Court was authorized to impose two, and only two, terms of imprisonment. It doesn't matter how many — how many different ways he violated his supervised release. Once he was found to have violated it, the Court was authorized under Section E to revoke both terms and then either impose consecutive or concurrent terms of a sanction, basically, based off of both revocations. And I'm not sure if that clarifies what occurred here. And so there was confusion in the record. It seems that in the beginning, the Court also kept referring to Charges 3 and 4 of the — of the petition, or the revocation petition. So with the — as the judge went along, what do you believe the record shows happened? Well, I think this was certainly clarified by the end of the hearing. And — and I would point the Court. I think it was an E.R. — I believe — give me one second. Let me look at this. So your position, counsel, then, is that — is that the fact that the — that there was both a firearm and ammunition, which each — each of which would have been an independent violation if they'd been found alone, is irrelevant, that what the district court really was doing was tying this to the convictions and not to the prior convictions and not to the — to violations of the — of the supervised release convictions? Yes, Your Honor. And I would point this Court to other cases of supervised release revocations. For Campbell, for example, this was cited in the government's brief. That was a case in which the original counts — there were 35 counts of mail fraud, which resulted in 35 sentences, essentially, which included 35 terms of supervised release. In that particular case, what ended up happening was once there was a single violation found, the Court imposed what was five consecutive six-month terms of imprisonment for five of the counts and then 31-day terms of imprisonment concurrently. And again, this is — The guidelines — what do the guidelines say about how to sentence multiple violations of supervised release conditions? Because in the normal context, there's all kinds of grouping rules and exception to grouping  Yes, Your Honor. The guideline itself seems somewhat silent about it. How — how did it work here? Well, Your Honor, in Campbell, this Court expressly addressed that the guidelines does not — it does still allow the Court to impose either consecutive or concurrent sentences after revoking supervised release. Well, of course you can do that. But if — you know, you can determine a total sentence and then allocate it among the counts. But how — how was the range calculated here? Because at one point in the discussion, the — the judge seems to think that there's two guideline ranges that get stacked, that there's a zero to 24 for each of the — of the relevant violation charges here, charge three and charge four, and then seemed to think that that gave you a zero to 48 range. And that kind of thinking seems to suggest, you know, that the judge was operating on the — on the kind of multiple punishment that counsel, your opponent, is contending. But it was done in the course of thinking through the guidelines. Am I wrong? Well, Your Honor — Indeed? Yes. And just to clarify what happened in the record here. So, originally, there were five counts — or, sorry, five charges in the petition. And the petition held with charge one was a grade A violation, and then the other charges were either grade B or grade C violations. So the type of — the grade of the violation is what feeds into what the sentencing guidelines will provide for what the sentencing guidelines range is. So if Mr. Richards had been found guilty of charge one, which is what was expected by probation and the government going into the — this sentencing hearing, he would have been exposed to that 48-month range. But during the hearing — and, again, this occurs later on when the judge makes the finding that he would not be finding Mr. Richards guilty of charge one — probation then said, well, now that there are grade B violations left, the maximum under the guidelines is now 24 months. So what the guidelines provides for is that we look at — But then what the court — what the court says is, so the lay of the land is what we have is, I have found charges three and four approved, charges five and six were admitted, and where that leaves us, based on the discussion we all just had, given that there — these are grade B violations, is that we have a criminal history category of five, and for the grade B violations, the advisory range for each is 18 to 24 months. So it seemed that the judge thought that the result is that you stack them and get zero to 48. I think, Your Honor, that with that particular provision — or that particular colloquy perhaps occurred earlier, I think, in the hearing. I think that by the end of the hearing, much of this was clarified by both the probation office when the court came back after a break, and the probation office explained, again, that each of the sentences would be tied to the original counts of conviction. And for each of those counts, they carried a — the range of 18 to 24 months because of the grade B violation. Right. But there's a difference between calculating a guideline range, which is aggregate. That's usually how it's done. And then allocating it, once you've determined it, to the underlying counts of convictions where you have to obey the stat maxes and allocate it out. But it seemed that at that first stage, looking at the guidelines, the judge was stacking the two, three and four, rather than what we would call in the normal context grouping them, and came up with a range of zero to 48 rather than a range of zero to 24. Yes, Your Honor. I mean, I think that the main point here, though, is that the calculation with the understanding of what range was applicable was clarified by the end of this hearing. And I do admit that there was a bit of confusion, I think, earlier on with how the court construed what the applicable guidelines range would be. Is there any relevance that there were two guns in the double jeopardy argument? Or is it — I'm trying to understand Mr. Sprankling's argument on Keene. In my understanding, again, is that his argument is that Mr. Richards was essentially punished twice for having two guns, which, if this were a criminal trial and this were a 922G charge, then that would not be permitted if they were possessed simultaneously. Of course, there's exceptions to that. Again, this is not a criminal trial. This is not a Keene case. Keene pertained to how 922G should be interpreted. And in that particular case, the Ninth Circuit found that Congress did not intend that particular statute to permit the prosecution of a simultaneous possession of two firearms. So he also — Mr. Sprankling also contends that his client was entitled to be judged by a jury and not by a judge in the preponderance of the evidence, and that Henderson didn't implicitly find otherwise. What's your position on that? Well, Your Honor, I would agree that this is probably an implicit holding of Henderson as far as the constitutionality of G, given how Henderson viewed Hayman in general. However, you know, I do also recognize that Henderson did not directly address 3583G, however other circuits have. And to Mr. Sprankling's point that his argument here, G-2, might be different from G, I would take a look at each of those cases that have decided that G remains constitutional after Hayman, because they do look at all of G, including subsection G-2, and they do walk through Justice Breyer's analysis in determining why Section G overall is constitutional. And to that extent, I do think that if we look at those factors, that very first factor, which — whether or not the statute is limited to situations where a defendant commits a discrete set of Federal criminal offenses, G-2 is, again, much broader than this. Even though the statute does include Federal offenses and it does cite Federal law for the definition of a firearm, it also includes just the conduct of firearm possession in general, including that which may or may not rise to the level of a Federal offense. So here Mr. Richards is found with two guns. But if he had only been found in possession of a single gun with the ammunition for that gun, could he be given consecutive sentences for possessing the gun and for possessing the ammo? Yes, Your Honor, absolutely. If he had been only found in violation of his — if he had been only found in violation of supervised release by one charge, he would have been given two sentences. Now, those could have run concurrently or those could have run consecutively. The Court had the discretion to decide which way to impose those sentences. So is there any limit to the length of sentence that the district court could have imposed for Mr. Richards' violations of conditions of supervised release? If so, what would that limit be? Well, the limitations here, Your Honor, again, come under E-3. And so under E-3, it says that when a term of supervised release is revoked for a Class A felony, when that's the original conviction, the cap is five years. And when it's a Class B, it's three years. And when it's the Class C or D, it's two years. So here what Mr. Richards had was he had a Class A felony in count three and he had a Class — I think it was a C felony in count one. And so, again, those counts each carried different statutory maximums as far as what he could be imposed. Again, that's why it's important to understand why there are two sentences here. There would always be two sentences, whether or not they're run concurrently or consecutively. And so with this particular case, again, those are the caps there, and the Court was well within the — the maximums of E-3. And then just to that point, I think that's one of the important aspects that makes G-2 very different from K. I think if you look at a — if you just look at the — how Haymond — how that case was conducted and then the problems with K there. I mean, Haymond was — he committed a child pornography offense originally, which had a maximum of 10-year — 10 years' imprisonment. And then when he violated supervised release with another child pornography offense under E-3, under revocation, he would have been capped at 2 years if his sentence had been — I mean, his supervised release had been revoked and he had been sentenced to imprisonment. Unfortunately, with K, what K did was require a 5-year mandatory minimum. And so it essentially went from what was a maximum of 2 years' imprisonment to 5 years. And the judge in the Haymond case actually found that quite repugnant that the statute would do that. And that's the issue that came all the way up to the Supreme Court, in which the Supreme Court found unconstitutional. That's simply not what has occurred here. We have, instead, a statute that is very much still tied to the ordinary revocation statute, which is Subsection E. And again, the Court had the full discretion upon revocation to decide whether — what term of imprisonment Richards warranted. And based off the record here, the Court was very thoughtful about the sentence it imposed. It clearly felt that a 48-month sentence was appropriate, given the egregiousness of Mr. Richards' breach of trust of the supervised release terms. And the way that — and that was part of the reason he decided to impose consecutive sentences there. And again, based off of the 3553A factors that he cited in his reasoning, the sentence was well within his discretion. Do either of my colleagues have any questions? No. All right. I've let you go a little over because we took Mr. Sprankling over. So, thank you. Yes. Thank you, Your Honor. All right. You have two minutes for rebuttal. Thank you, Your Honor. Your Honors, I want to take a step back and focus on the double jeopardy issue. And I think we got a little tangled up in the weeds of precisely how the sentence was handed down. But our point is this. Mr. Richards was sentenced for two charges. They were proved up at trial. The judge found they were proved by a preponderance of the evidence. One was possession of a firearm. One was possession of ammunition. Traditionally, under the Keene case that we've cited to you, that would be a violation of the double jeopardy clause. That's — that's the starting point. Okay. Now, I recognize — If we disagree with the premises, if we thought that — that you had a firearm — a loaded firearm, either one of — either the ammo or the firearm would have been sufficient, and you're being charged — he's violated both his drug conviction and his firearm conviction, then do you have a double jeopardy argument? So, I don't think that the ammunition and the firearm could be independent, based on the Keene reasoning. And if you — No. No. Let's — let's just take those out. Let's — we've — Okay. It turns out that either one of those would be sufficient. But let's suppose that the judge just says, look, you're found with a loaded gun, and that violates both your drug charge, the supervised conditions for your drug charge, and the 924, 922, whatever it was, the prior — And I'm glad you raised that point, Judge Bybee, because as I understand the government's position, a single bullet would have justified both of these two four-year — both of these two two-year sentences. But why would that violate the double jeopardy clause? So I've shifted it just a little bit. I understand there's some ambiguity in the record. Yes. So this is — this is — the best I can say, Your Honor, is that double jeopardy is a flexible concept. This Court has held it — the Supreme Court has held it specifically in the appealability context. And that means that we get to do whatever we darn well please? Well, if you don't — if you're not satisfied with double jeopardy, the due process clause provides a backstop in these circumstances. And I would submit, Your Honors, that a situation where, again, as the government suggests, someone could be sentenced to four years in prison, based on a preponderance of the evidence, without a jury, based on a single bullet in their pocket, does seem to be very serious due process concerns. So are you saying that just taking the violations to charges three and four, without anything more, even if the sentences had been concurrent, that violated double jeopardy? I mean, because we don't — we don't allow double convictions for overlapping offenses based on the same double jeopardy rationale. Is that your argument, that that's essentially the principle here, that three and four both shouldn't have been taken? I think the consecutive one poses the problem here. If they were concurrent, then he would just be subject to a two-year sentence, and I think there would be a harmless error problem, potentially. But in this case, they are separate, and he's serving two separate jail periods. I mean, I guess — so your question is, in theory, would there be a constitutional violation? I suppose, but it's certainly much more dramatic here when it literally doubled the length of his sentence, again, based on a preponderance of the evidence, which was quite thin. And we haven't had a chance to go into that, but I do hope you take a close look at the end of our briefs, which discuss it in some detail. Your Honors, I know I'm past my time. Thank you for your time. Let me find out if either of my colleagues have questions. You don't get to run back to the Council table. I think we're done. I'm happy to stay up here as long as you want, but thank you, Your Honors. I appreciate it. Thank you both for your argument. I only — I'm speaking for myself, but you both did the Ninth Circuit proud today, and in my view, I think we had the best argument on the last day on Friday. So thank you both. This matter is now submitted. Thank you. This Court is in recess for the week.
judges: BYBEE, CALLAHAN, COLLINS